UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ROBERT EATON,

          Plaintiff,

v.                                      Case No. 22-cv-1459-pp

KENOSHA COUNTY, *et al.*,

          Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), SCREENING COMPLAINT UNDER 28 U.S.C. §1915A AND DENYING WITHOUT PREJUDICE PLAINTIFF'S REQUEST FOR COUNSEL (DKT. NO. 1)**

Robert Eaton, who is incarcerated at Dodge Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that staff at Froedtert Hospital drew his blood without his consent and forced him to provide a urine sample. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, screens his complaint, dkt. no. 1, and denies without prejudice his request for counsel, dkt. no. 1 at 5.

**I.   Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1).

1

He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On December 20, 2022, the court ordered the plaintiff to pay an initial partial filing fee of $17.03. Dkt. No. 5. The court received that fee on December 30, 2022. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay remainder of the filing fee over time in the manner explained at the end of this order.

**II. Screening the Complaint**

    A.    <u>Federal Screening Standard</u>

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). <u>See</u> <u>Cesal v. Moats</u>, 851 F.3d 714, 720 (7th Cir. 2017) (citing <u>Booker-El v. Superintendent, Ind. State Prison</u>, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts,

2

accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.   The Plaintiff's Allegations

The plaintiff has sued Kenosha County; Froedtert Hospital; Jane Doe Nurses #1 and #2; Unknown Director of Nursing; Unknown Health Services Administrator; On-Duty Resident Doctor (E.R.); Kenosha County Sheriff David Beth; Kenosha County Sheriff Deputy Caroll; Unknown Shift Supervisor, Kenosha County Detention Center; and Ashley Seeker, a private citizen who the plaintiff says was the "moving force" behind the constitutional violations. Dkt. No. 1-2, 11.

The plaintiff alleges that on February 8, 2019, he was arrested for several criminal offenses, including sexual offenses. Id. at 4. He states that he went to trial in Kenosha County Circuit Court and that he was acquitted of the sexually based offenses. Id. The plaintiff says that before trial, the alleged victim of the sexually based offenses requested that he be tested for sexually transmitted diseases but that the trial judge did not issue an order compelling the plaintiff to provide blood and urine samples. Id.

The plaintiff alleges that on March 8, 2021, his unit officer at the Kenosha County Detention Center ("KCDC") told him that he was going off-site, and Deputy Caroll then transported him to Froedtert Hospital ("Froedtert") in Pleasant Prairie, Wisconsin. Id. When they arrived at Froedtert, nursing staff allegedly advised Deputy Caroll that they could not perform any testing without a court order or subpoena. Id. After waiting at the hospital for a while, Deputy Caroll allegedly called her supervisor (presumably, Unknown KCDC Shift Supervisor), who advised her to go to another hospital. Id. The plaintiff states that after they returned to the transport van, Deputy Caroll received a call and she then informed the plaintiff, "they will do it now." Id. The plaintiff and Deputy Caroll allegedly returned to the hospital where a nurse told them that they still needed a valid court order to draw blood and take a urine sample. Id. The plaintiff states that Deputy Caroll made some calls, including to a Kenosha County judge, and she informed the plaintiff that the judge was at lunch. Id. The plaintiff alleges that eventually the nurse said "they" had contacted "the other hospital and they would not draw the blood specimens and urine

4

sample." Id. After more waiting, a nurse allegedly asked the plaintiff to sign "something," but he did not sign it. Id. The plaintiff says that a nurse returned to the emergency room and said, "We can take the blood and test it, but we need a subpoena to release the results." Id.

The plaintiff alleges that, despite him not consenting and his repeated protests, he was forced to provide urine and blood samples. Id. He says that the nurse drew six full tubes ("the very long tubes") of blood which he thought was "extremely excessive and not at all the proper protocol or procedure for a STD test." Id. at 4-5. The plaintiff states that when he returned to KCDC, he was not provided an explanation as to why staff took him to a private hospital and forced him to provide urine and extremely excessive amounts of blood against his will. Id. at 5. He says that his arm had extreme pain shooting through it for months afterward and he suffered emotional distress. Id.

C. Analysis

The Fourth Amendment protects citizens against unreasonable searches and seizures. Taking a blood sample and/or a urine sample is a search for Fourth Amendment purposes. *E.g.*, Skinner v. Railway Labor Executives' Assn., 489 U.S. 602, 618 (1989); Schmerber v. California, 384 U.S. 757, 767-68 (1966); Herzog v. Vill. of Winnetka, Ill., 309 F.3d 1041,1044 (7th Cir. 2002). Whether a search is "reasonable" is determined by balancing its intrusiveness to the individual against the government's legitimate interest in it. Delaware v. Prouse, 440 U.S. 648, 654 (1979). "Except in certain well-defined circumstances, a search or seizure . . . is not reasonable unless it is

5

accomplished pursuant to a judicial warrant issued upon probable cause." Skinner, 489 U.S. at 619; see also Joy v. Penn–Harris–Madison Sch. Corp., 212 F.3d 1052, 1058 (7th Cir. 2000). The plaintiff may proceed on a Fourth Amendment claim against Deputy Caroll for allegedly forcing him to submit to a blood draw and urine sample without a warrant, and he may proceed against Unknown Shift Supervisor at KCDC for allegedly directing Caroll to take the plaintiff to a hospital for blood and urine samples. While it is not clear at if the hospital staff defendants are state actors under §1983, at this stage the plaintiff also may proceed against Jane Doe Nurse #1, Jane Doe Nurse #2, Unknown Director of Nursing, Unknown Health Service Administrator and Unknown On-Duty Resident Doctor for allegedly drawing his blood and/or collecting his urine without his consent or a court order. See Rodriguez v. Plymouth Ambulance Serv., 577 F.3d 816, 827 (7th Cir. 2009) (To determine whether an individual is a state actor, a court must find "such a 'close nexus between the State and the challenged action' that the challenged action 'may be fairly treated as that of the State itself.'"). The plaintiff may proceed against Deputy Caroll, Unknown Shift Supervisor and the hospital defendants in their individual capacities. He will need to use discovery to identify the unknown defendants.

The court will not allow the plaintiff to proceed against Kenosha County or Froedtert Hospital. Under §1983, a private corporation may be liable under Monell v. Dep't of Soc. Servs., 436 U.S. 58 (1978) if a "municipal (or corporate) policy or custom gave rise to the harm (that is, caused it)[.]" Thomas v. Martija,

6

991 F.3d 763, 773 (7th Cir. 2021) (quoting Glisson v. Ind. Dep't of Corr., 849 F.3d 372, 379 (7th Cir. 2017)). To prove that the corporation itself inflicted the harm, the plaintiff may show that (1) the alleged unconstitutional conduct implements or executes an official policy adopted by the entity's officers, (2) the unconstitutional action was performed pursuant to a custom or (3) an actor with final decision-making authority within the entity adopted the relevant policy or custom. Id. at 773-74 (citing Monell, 436 U.S. at 690-91, 694). Likewise, to establish liability against Kenosha County under Monell, the plaintiff must demonstrate: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." Waters v. City of Chi., 580 F.3d 575, 581 (7th Cir. 2009) (quoting Estate of Sims ex rel. Sims v. Cty. of Bureau, 506 F.3d 509, 515 (7th Cir. 2007)). The complaint does not allege sufficient facts to state a claim for relief that is plausible on its face because plaintiff has not pled facts that support a reasonable inference that Kenosha County's or Froedtert's policy or custom deprived him of his constitutional rights. See McCauley v. City of Chi., 671 F.3d 611, 616 (7th Cir. 2011) (citing Iqbal, 556 U.S. at 678). The court will dismiss these defendants.

  The court also will not allow the plaintiff to proceed against Kenosha County Sheriff David Beth. To hold an individual defendant liable under §1983 for a violation of an incarcerated individual's constitutional rights, the plaintiff

must show that the defendant was personally responsible for that violation. Childress v. Walker, 787 F.3d 433, 439 (7th Cir. 2015); Sanville v. McCaughtry, 266 F.3d 724, 740 (7th Cir. 2001). "A defendant will be deemed to have sufficient personal responsibility if he directed the conduct causing the constitutional violation, or if it occurred with his knowledge or consent." Sanville, 266 F.3d at 740 (internal quotation marks omitted). While the defendant need not have participated directly in the deprivation of the plaintiff's constitutional right to be held liable, he or she must nonetheless have " 'know[n] about the conduct, facilitate[d] it, approve[d] it, condone[d] it, or turne[d] a blind eye for fear of what they might see.'" Matthews v. City of E. St. Louis, 675 F.3d 703, 708 (7th Cir. 2012) (quoting Jones v. City of Chi., 856 F.2d 985, 992–93 (7th Cir. 1988)). The court will dismiss Beth because the plaintiff has not alleged that he had any involvement in the incident described in the complaint.

Finally, plaintiff has not stated a claim against Ashley Seeker because he has not alleged that she is a state actor. See Buchanan–Moore, 570 F.3d at 827. (It appears that she may be the alleged victim of the sexually related charges of which the plaintiff was not convicted.) Because the plaintiff has not alleged facts stating that she participated in the incident, Seeker also lacks personal involvement. The court will dismiss Seeker.

### III. Request for Counsel (Dkt. No. 1)

The plaintiff's complaint includes a request that the court appoint him a lawyer. Dkt. No. 1 at 5. The plaintiff states that he believes this case will

8

require extensive discovery and expert medical opinions, which he cannot do because he is incarcerated and indigent. Id. He also states that he has no legal knowledge, no meaningful access to a law library and that another incarcerated individual who had been assisting him is leaving the facility. Id. The plaintiff says that he takes psychotropic medications and that he has a diminished mental capacity. Id.

In a civil case, the court has discretion to recruit a lawyer for individuals who cannot afford to hire one. Navejar v. Iyiola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" Eagan v. Dempsey, 987 F.3d 667, 682 (7th Cir. 2021) (quoting Pruitt v. Mote, 503 F.3d 647, 654-55 (7th Cir. 2007)). And, given the scarcity of *pro bono* counsel resources, the court may also consider the merits of a plaintiff's claim and what is at stake. Watts v. Kidman, 42 F.4th 755, 763-64 (7th Cir. 2022).

To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. Pickett v. Chicago Transit Authority, 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." Eagan, 987 F.3d at 682. To demonstrate he satisfied the first prong, the plaintiff must show he contacted at least three lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

In particular, the lawyers' responses may have bearing on the court's decision to exercise its discretion because they may shed light on whether the plaintiff's attempts to hire counsel were reasonable. Pickett, 930 F.3d at 871. In deciding whether to recruit counsel, the court should consider the reasons the lawyer declined representation, including whether the plaintiff was unwilling (as opposed to unable) to pay a retainer; whether the lawyer lacked time or capacity to take on new clients; or whether the subject matter of the case requires a lawyer who specializes in a specific area of law. Id. The court should also consider how well the plaintiff articulated his case to the prospective lawyer. Id. Where a plaintiff "conveyed his situation well and counsel deemed the claim feeble, then it would be inappropriate for a court to intervene" and recruit counsel. Id. But, where a plaintiff is inarticulate, then a court "may have a useful role to play in recruiting counsel." Id.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate

10

those claims." Eagan, 987 F.3d at 682. When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." Pennewell v. Parish, 923 F.3d 486, 490 (7th Cir. 2019). The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490-491. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files his motion in the early stages of the case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." Pickett, 930 F.3d at 871.

In this case, the plaintiff has not shown that he has made any attempt to try to find a lawyer on his own. As explained above, to satisfy this threshold requirement, the plaintiff must contact at least three lawyers and provide the court with detailed information about his attempts, including the lawyers' responses, if any. Because the plaintiff has not satisfied the first requirement for recruitment of counsel, the court will deny without prejudice his request that that the court appoint him a lawyer.

Once the plaintiff has contacted at least three lawyers, he still must demonstrate to the court that he cannot handle the case on his own. Because the court now has screened the complaint, the next step is for the defendant to answer or otherwise respond to the complaint. If the defendant files an answer, the court will set a schedule for the parties to exchange "discovery"—ask each other questions about the allegations the plaintiff has made, ask each other for supporting documents and ask each other to admit certain facts. Exchanging discovery rarely involves legal research or analysis; it simply involves the parties asking each other for the information the other party has about the allegations in the complaint. If, rather than filing an answer, the defendant files a motion of some sort—such as a motion to dismiss—the plaintiff will have the opportunity to respond by explaining why he believes the case should not be dismissed. If, during any of these stages of the case, the plaintiff believes that the case has become too complex for him to handle, he may file another motion asking the court to appoint him a lawyer. But he still must meet the requirement of contacting lawyers himself, to see if he can find someone to represent him without the court's intervention.

## IV. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's request for appointment of counsel. Dkt. No.1

The court **DISMISSES** defendants Kenosha County, Froedtert Hospital, David Beth and Ashley Seeker.

The court **ORDERS** the U.S. Marshals Service to serve a copy of the complaint and this order on defendant Deputy Caroll under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals Service will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** defendant Deputy Caroll to file a responsive pleading to the complaint.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$332.97** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the

transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to Warden at Dodge Correctional Institution.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that, if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

clerk of court of any change of address. The court also advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by incarcerated persons. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 28th day of March, 2023.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**