UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ROBERT EATON,

          Plaintiff,

v.                                                    Case No. 22-cv-1459-pp

JANE DOE NURSE #1, JANE DOE NURSE #2,
UNKNOWN DIRECTOR OF NURSING,
UNKNOWN HEALTH SERVICE ADMINISTRATOR,
UNKNOWN ON DUTY RESIDENT DOCTOR ER,
KENOSHA COUNTY SHERIFF DEPUTY CAROLL
and UNKNOWN SHIFT SUPERVISOR,

          Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION TO APPOINT COUSNEL
(DKT. NO. 16) AND STAYING SCHEDULING DEADLINES**

      The plaintiff, who is incarcerated at Dodge Correctional Institution and representing himself, filed this case under 42 U.S.C. §1983. The court screened the complaint and allowed the plaintiff to proceed on a Fourth Amendment claim against Kenosha County Sheriff Deputy Caroll for allegedly forcing him to submit to a blood draw and urine sample without a warrant, and against Unknown Shift Supervisor at Kenosha County Detention Center for allegedly directing Deputy Caroll to take the plaintiff to a hospital for blood and urine samples. Dkt. No. 6 at 6. The court also allowed the plaintiff to proceed against Froedtert Hospital staff Jane Doe Nurse #1, Jane Doe Nurse #2, Unknown Director of Nursing, Unknown Health Service Administrator and Unknow On-Duty Resident Doctor for allegedly drawing his blood and/or collecting his urine without his consent or a court order (although the court noted that it was

1

not clear whether the hospital staff defendants are state actors under 42 U.S.C. §1983). Id. The court stated that the plaintiff would need to use discovery to identify the Doe defendants. Id. The plaintiff now has filed his second motion to appoint counsel. Dkt. No. 16.

In support of his motion, the plaintiff states that he has written about fifteen attorneys to try to find representation, but that only four have written back to him. Id. at 2. The plaintiff recounts that he received help from another incarcerated individual in filing his complaint and that at his current institution, he cannot obtain the legal assistance he needs to litigate the case. Id. The plaintiff says that he takes psychotropic medications and has a diminished mental capacity. Id. He says that he cannot perform any type of legal work on his own and that he does not possess any legal skills. Id. at 3. The plaintiff states he feels that with his incarceration at Dodge, he cannot properly conduct discovery or locate and contact witnesses, which includes witnesses at Froedtert Hospital. Id. The plaintiff submitted the declaration of another incarcerated individual who prepared for him his motion to appoint counsel. Dkt. No. 17.

In a civil case, the court has discretion to recruit a lawyer for individuals who cannot afford to hire one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for

these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" Eagan v. Dempsey, 987 F.3d 667, 682 (7th Cir. 2021) (quoting Pruitt v. Mote, 503 F.3d 647, 654-55 (7th Cir. 2007)). And, given the scarcity of *pro bono* counsel resources, the court may also consider the merits of a plaintiff's claim and what is at stake. Watts v. Kidman, 42 F.4th 755, 763-64 (7th Cir. 2022).

To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. Pickett v. Chi. Transit Authority, 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." Eagan, 987 F.3d at 682. To demonstrate he satisfied the first prong, the plaintiff must show he contacted at least three lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims." Eagan, 987 F.3d at 682. When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel."

3

Pennewell v. Parish, 923 F.3d 486, 490 (7th Cir. 2019). The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490-491. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files his motion in the early stages of the case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." Pickett, 930 F.3d at 871.

The plaintiff has made a reasonable attempt to find a lawyer on his own. While his claim that the defendants unlawfully forced him to provide blood and urine samples is not very complex, he is suing two sets of defendants (some with Kenosha County and some with Froedtert) and his ability to identify the Froedtert defendants is limited because he is incarcerated. In addition, the plaintiff says he has a diminished mental capacity and that he cannot perform any legal work on his own. The court will recruit the plaintiff a lawyer to identify the Doe defendants, file an amended complaint, engage in discovery and respond to any dispositive motions.

The court cautions the plaintiff to be patient; it is often difficult to find lawyers willing and able to represent plaintiffs on a volunteer basis. Once the

court has found counsel, the court will issue an order notifying the parties. The court will stay the case deadlines pending recruitment of counsel. The court will set new deadlines after it finds counsel for the plaintiff.

The court **GRANTS** the plaintiff's motion to appoint counsel. Dkt. No. 16.

The court **ORDERS** that the deadlines set in the scheduling order are **STAYED** pending recruitment of counsel for the plaintiff.

Dated in Milwaukee, Wisconsin this 6th day of July, 2023.

        **BY THE COURT:**

        **HON. PAMELA PEPPER**
        **Chief United States District Judge**