# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

ROBERT EATON

      **Plaintiff,**

  v.

DORIS J. CARROL, *et al.*,

      **Defendants.**

Case No. 22-CV-1459

---

## ORDER

---

Plaintiff Robert Eaton, who is incarcerated and is represented by counsel, filed a complaint under 42 U.S.C. § 1983 allowing him to proceed on claims against various Kenosha County officers and Froedtert Hospital employees pursuant to the Fourth and Fourteenth Amendments related to a blood draw and urine test that were allegedly unlawfully taken and related state law claims. Defendant Margaret Boilini moved to dismiss the claims against her on the grounds that they are time-barred under the applicable statute of limitations and on the grounds that she is not considered a state actor under § 1983. (ECF No. 72)[1]

### LEGAL STANDARD

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must 'state a claim for relief that is plausible on its face.' . . . Factual allegations are accepted as

---

[1] Two other sets of defendants have also filed similar motions to dismiss or judgment on the pleadings that the court will address in subsequent orders.

true at the pleading stage, but 'allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion.'" *Adams v. City of Indianapolis,* 742 F.3d 720, 728-29 (7th Cir. 2014) (citations omitted). The allegations must "permit the court to infer more than the mere possibility of misconduct." *Olson v. Champaign Cty., Ill.*, 784 F.3d 1093, 1099 (7th Cir. 2015) (citations omitted). At this stage, the court should not ask whether the allegations actually occurred but instead should ask whether they could occur. *Id.* Here, the court is able to resolve the motion by relying solely on the complaint, the docket entries, and by taking judicial notice of the court record. *Gen. Elec. Cap. Corp. v. Lease Resol Corp.*, 128 F.3d 1074, 1081-82 (7th Cir. 1997). As such, the court will analyze this case using the motion to dismiss standard and does not need to convert this into a motion for summary judgment.

## PROCEDURAL HISTORY

The procedural history of this case directly impacts whether Boilini was timely added as a defendant. The relevant events of this case—namely the blood draw and collection of a urine sample—occurred on March 8, 2021. (ECF No. 1 at 4.) Relevant to this motion, Eaton alleged that an unknown nurse employed by Froedtert took blood samples and a urine sample against Eaton's will, including drawing six full tubes of blood. (*Id.*) Eaton filed the case *pro se* on December 6, 2022, noting that, "the entirety of this complaint was prepared almost in whole by a fellow pretrial detainee, and that I have zero experience with civil law proceedings." (*Id.* at 5.) Eaton further explained that he takes "psychotropic medications and [has] a diminished mental capacity", and that the pretrial detainee who was helping him with the complaint was

2

leaving the facility in which they were incarcerated "within days of this writing." (*Id.*) Attached to the complaint was four pages of exhibits, the first of which is an after-visit summary of Eaton's visit to Froedtert on March 8, 2021, which stated that Eaton "was seen by MARGARET BOILINI PA-C" for a variety of "Routine Lab Draws." (ECF No. 1-1 at 1.) This exhibit is not referenced in the body of the complaint.

The case was initially in front of Chief Judge Pamela Pepper, who screened the complaint on March 28, 2023. (ECF No. 6.) Judge Pepper allowed Eaton to proceed on Fourth and Fourteenth Amendment claims against "Jane Doe Nurse #1, Jane Doe Nurse #2, Unknown Director of Nursing, Unknown Health Services Administrator, and Unknown On-Duty Resident Doctor for allegedly drawing [Eaton's] blood and/or collecting his urine without his consent or a court order." (*Id.* at 6.) Judge Pepper noted that "it is not clear if the hospital staff defendants are state actors under §1983", and at this stage in the case, she would allow Eaton to proceed on claims against them. (*Id.*) The "Doe labels" Judge Pepper used came from the beginning section of the complaint where Eaton (or his jailhouse lawyer) listed the additional defendants. (ECF No. 1 at 2.) Judge Pepper noted that Eaton would have to use discovery to identify the real names of the Doe defendants but also stated that the parties "must not begin discovery under after the court enters a scheduling setting deadlines for completing discovery and filing dispositive motions." (ECF No. 6 at 6, 14.) Eaton had also included a motion to appoint counsel in his complaint, (ECF No. 1 at 5), which the court denied without prejudice because Eaton had not made a reasonable effort to hire a lawyer on his own, (ECF No. 6 at 11.)

3

The sole named defendant, Kenosha County Sheriff's Deputy Doris J. Carrol, answered the complaint on May 22, 2023. (ECF No. 14.) On May 24, 2023, Judge Pepper entered a scheduling order stating that Eaton must identify the Doe defendants and/or file an amended complaint by August 25, 2023. (ECF No. 15, ¶ 1.)

On June 6, 2023, Eaton filed a second motion to recruit counsel, (ECF No. 16), which the court granted on July 6, 2023, (ECF No. 20.) In her order, Judge Pepper determined that, "[w]hile his claim that the defendants unlawfully forced him to provide blood and urine samples is not very complex, [Eaton] is suing two sets of defendants (some with Kenosha County and some with Froedtert) and his ability to identify the Froedtert defendants is limited because he is incarcerated. In addition, the plaintiff says he has a diminished mental capacity and that he cannot perform any legal work on his own." (*Id.* at 4.) Judge Pepper further stayed the case deadlines set forth in the scheduling order pending recruitment of counsel for Eaton. (*Id.* at 5.)

After nearly a year of trying, on May 17, 2024, Judge Pepper referred the case to the Eastern District of Wisconsin's Bar Association for assistance in locating a lawyer to represent Eaton *pro bono*. (ECF No. 23.) On June 18, 2024, Judge Pepper entered an order acknowledging that Thomas Hayes would represent plaintiff on a volunteer basis. (ECF No. 24.) Judge Pepper then set a status conference for August 6, 2024. (ECF No. 25.)

At the August 6, 2024, status conference, Hayes indicated that while he had spoken to Eaton, he did not have enough information to determine how long it would take him to identify the Doe defendants in the case or whether to amend the

complaint. (ECF No. 27.) Judge Pepper set another status conference for August 19, 2024. (*Id.*) At the August 19, 2024, status conference, Hayes expressed doubts about his ability to continue to represent Eaton, and that Eaton had asked him to reach out to a potential witness. (ECF No. 30). Judge Pepper requested that Hayes at least attempt to contact the potential witness before determining if he could continue representation and set another status conference for September 6, 2024. (*Id.*) At the September 6, 2024, hearing, Hayes told Judge Pepper that he intended to amend the complaint, and Judge Pepper explained to him that he would have to file leave to do so, suggesting that he file a motion to amend the complaint so the named defendant, Carrol, would have time to respond. (ECF No. 32.) Judge Pepper gave Hayes until November 8, 2024, to file a motion to amend the complaint. (*Id.*)

On October 23, 2024, Hayes filed a letter stating that he had "decided against moving the Court for an Order permitting an amendment of the Complaint. I have informed Mr. Eaton of my decision and corresponding intent to withdraw as his attorney in this case. Mr. Eaton requested that my potential withdrawal as his attorney from this case not leave him in a worse procedural position than when I originally agreed to represent him on a *pro bono* basis." (ECF No. 33.)

On December 13, 2024, Judge Pepper held another status conference wherein Hayes requested to withdraw as counsel for Eaton, which Judge Pepper granted. (ECF No. 36.) Judge Pepper noted that she had stayed the discovery and dispositive motion deadlines and asked Eaton if he would like another lawyer recruited for him. (*Id.*) Eaton responded that he would, but he also requested that Carrol provide him

discovery so he could review it. (*Id.*) Judge Pepper explained that if she lifted the stay for discovery, it would open the full discovery process, and after considering Judge Pepper's point, Eaton asked her to keep the stay in place until another lawyer could be recruited. (*Id.*)

On January 13, 2025, Judge Pepper entered an order naming James Jenkins as Eaton's *pro bono* counsel for the limited purpose of assisting Eaton in identifying the Doe defendants and filing an amended complaint. (ECF No. 37.) A status conference was held on February 21, 2025, wherein Judge Pepper ordered Eaton to identify the Doe defendants and file an amended complaint by May 23, 2025. (ECF No. 42.) On February 24, 2025, Judge Pepper entered an order adding Froedtert as a defendant for the limited purpose in assisting Eaton identify the Froedtert Doe defendants. (ECF No. 41.) The United States Marshal Service served Froedtert Memorial Lutheran Hospital on March 14, 2025. (ECF No. 45.) On March 25, 2025, a lawyer for Froedtert Memorial filed a letter indicating that Froedtert Memorial is different than the Froedtert Hospital in Pleasant Prairie, Wisconsin. (*Id.*) On April 21, 2025, Judge Pepper issued an order dismissing Froedtert Memorial and adding Froedtert South as a defendant for the limited purpose of helping plaintiff identify the Doe defendants. (ECF NO. 46.) Froedtert South returned an executed summons on April 30, 2025. (ECF No. 48.)

On June 26, 2025, Eaton moved for a partial lift of the stay of the discovery deadline for the purpose of using the discovery process to identify the Doe defendants. (ECF No. 52.) Judge Pepper granted the motion via text only order on June 27, 2025,

6

ordering the named defendants to respond to discovery regarding the Doe defendants within 14 days of service. (ECF No. 53.) Eaton's amended complaint was then due ten days after the names of the Doe defendants were provided. (*Id.*)

On July 14, 2025, Eaton filed an amended complaint that identified the Doe defendants, including Boilini. (ECF NO. 55, ¶ 12.) The amended complaint also identified Boilini as the person who ordered the blood draw, and it appears that Eaton alleges that she did not perform the draw, but she was present when it happened. (*Id.*, ¶¶ 53, 54, 57.) The amended complaint also stated that "the Froedtert defendants also compelled Mr. Eaton to urinate into a specimen cup." (*Id.*, ¶ 59.) The amended complaint describes the Froedtert defendants as "Harold, Boilini, and Puente." (*Id.*, ¶ 51.)

On July 22, 2025, Judge Pepper screened the amended complaint, ordering service of the amended complaint on Boilini and the other identified Doe defendants. (ECF No. 56.) Judge Pepper also set a status conference for August 29, 2025. (*Id.*) On August 27, 2025, Boilini filed the present motion to dismiss. (ECF No. 72.)

After all parties consented to the jurisdiction of a magistrate judge, on November 13, 2025, the case was reassigned to this court. (ECF No. 87.)

## ANALYSIS

Boilini moves to dismiss on two grounds: 1) that the claims against her are time-barred because she was identified as a defendant after the statute of limitations expired; and 2) she is not a state actor under § 1983, thus cannot be held liable.

*Statute of Limitations*

Section 1983 does not provide a limitations period, so federal courts adopt the limitations period applicable to personal injury claims under state law. *Devbrow v. Kalu*, 705 F.3d 765, 767 (7th Cir. 2013.) In Wisconsin, "the applicable residual statute for § 1983 claims is Wis. Stat. § 893.53." *D'aquisto v. Love,* No. 20-c-1034, 2020 WL 5982895 at *1, (E.D. Wis. Oct. 8, 2020). During the relevant time period, Wis. Stat. § 893.53 provided for a three-year statute of limitation period. The parties agree that the statute of limitations for both the § 1983 claims and the state claims the court took judicial notice of are 3 years. *See* Wis. Stat. § 893.57 (statute of limitations for battery claim is three years); Wis. Stat. § 893.54 (statute of limitations claim for negligence is three years).

Boilini argues that Eaton had to add her as a defendant on or before March 8, 2024, which is when the three-year statute of limitations period ran. Eaton does not dispute this but instead asserts that the statue of limitations should be equitably tolled because Eaton could not identify Boilini as the Doe defendant due to numerous delays in the case.

Equitable tolling may apply where Doe defendants are identified after the statute of limitations period has run. *Herrera v. Cleveland*, 8 F.4th 493, 497 (7th Cir. 2021). "Federal courts use the tolling rules of whichever jurisdiction supplies the statue of limitations." *Degrave v. D.O.C.*, Case No. 21-cv-256-wmc, 2021 WL 5371393 at *2 (W.D. Wis. Nov. 18, 2021) (citing *Shropshear v. Corp. Counsel of City of Chi.*, 275 F.3d 593, 595 (7th Cir. 2001)). In Wisconsin, the state "case law on equitable tolling is sparse, but it is clear that . . . tolling is available only when the plaintiff's

failure to meet a filing deadline is out of the plaintiff's control or occurred despite the plaintiff's due diligence." *Stallings v. Duran*, Case No. 22-CV-1330-JPS, 2023 WL 3170241 at * 1 (E.D. Wis. Apr. 28, 2023) (citations omitted). In other words, "[e]quitable tolling halts the limitations clock 'when a litigant has pursed his rights diligently but some extraordinary circumstance prevents him from brining a timely action.'" *Herrera*, 8 F.4th at 499 (quoting *Xanthopoulous v. U.S. Dept. of Lab.*, 991 F.3d 823, 831 (7th Cir. 2021). In the Eastern District of Wisconsin, where a court's management of the case and the procedural history and posture of the case interfered with the plaintiff's ability to identify the Doe defendants before the expiration of the limitations period the court equitably tolled the limitations period. *Juarez v. May*, Case No. 21-CV-1092, 2023 WL 7386199 at *2 (E.D. Wis. Nov. 8, 2023).

It is clear that the court's management of the case and the procedural history and posture of the case interfered with Eaton's ability to identify the Doe defendants. The complaint was filed on December 6, 2022. Judge Pepper did not screen the complaint allowing Eaton to proceed on claims against the Doe nurse who took his blood and urine until March 28, 2023. In the screening order, Judge Pepper noted that Eaton had named Doe defendants but explicitly ordered him to refrain from conducting discovery regarding the Does' identities until she entered a scheduling order. Judge Pepper entered a scheduling order on May 24, 2023, after the sole named defendant, Carroll, answered the complaint. Thus, Eaton could not begin to identify the Doe defendant until May 24, 2023.

Shortly there after, Eaton moved for the appointment of a lawyer, which Judge Pepper granted on July 6, 2023. In the same order, she also stayed all the case deadlines pending recruitment of counsel. In her order, Judge Pepper noted that it could take some time to recruit counsel. A *pro bono* lawyer was not recruited until June 18, 2024, almost a year later, which was no fault of Eaton's. Indeed, it is no secret in this district that it is extremely difficult to find lawyers willing to represent *pro se* prisoners, especially in the discovery phase of a litigation.

Unfortunately, after four months of hearings, wherein Hayes dragged his feet on representing Eaton, Hayes withdrew from the case on December 14, 2023. Again, Hayes's inability to work on the case was no fault of Eaton's. At the hearing, Eaton inquired about opening discovery so he could identify the Doe defendants, but Judge Pepper advised against it, noting that another lawyer would be recruited. Ultimately, Eaton agreed with Judge Pepper, and the case deadlines remained stayed.

Jenkins came on as Eaton's *pro bono* lawyer on January 13, 2025. The case deadlines were still stayed. Judge Pepper held a status conference on February 21, 2025, and set a deadline to identify the Doe defendants and amend the complaint for May 23, 2025. Eaton, then, could not plausibly identify the Doe defendants until at least February 21, 2025, which was already after the expiration of the limitations period of March 8, 2024. Other delays, including adding Froedtert as a limited defendant to identify the Froedtert Doe defendants (which arguably should have been done at screening), and then the USMS serving the wrong Froedtert, were also delays

outside of Eaton's control. As a result of these delays, Eaton did not identify the Doe defendants, including Boilini, until July 14, 2025.

Based on this procedural history, Eaton could not identify the Doe defendants prior to the expiration of the March 8, 2024 deadline, and his inability to do so was through no fault of his own. The court's delays, which in and of itself were unusual, caused Eaton's inability to timely identify the Does. This is not a situation where the ordinary course of litigation caused typical delays. The failed recruitment of counsel and the USMS mix-up, for example, are highly unusual.

Boilini argues that she should never have been listed as a Doe defendant but instead named in the original complaint because an exhibit attached to the complaint showed she was the one who administered the blood draw and collection of the urine sample. Federal Rule of Civil Procedure 10(c) "provides that 'written instruments' attached to a pleading become part of that pleading for all purposes. Thus, when a plaintiff attaches to the complaint a document that qualifies as a written instrument, and her complaint references and relies up on that document in asserting her claim, the contents of that document become part of the complaint and may be considered as such." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

However, district courts are entitled to construe *pro se* submissions leniently and light most favorable to the plaintiff. *See Grady v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). Eaton admitted in his complaint that he was probably not able to litigate this case on his own (a conclusion Judge Pepper ultimately came to). He noted he was on psychotropic medications and that the majority of his complaint was written by a

11

jailhouse lawyer who then left the institution almost immediately helping Eaton with his complaint. The complaint itself never incorporates the exhibit by reference. Also, Judge Pepper, in her screening order, decided not to add Boilini as a defendant based off the exhibits. Given Eaton's limited capacity, the assistance he required in even bringing this suit, and the fact that the court decided not to add Boilini right away, it would not be equitable to find that the claim against Boilini was time-barred.

*State Actor*

Boilini argues that she should be dismissed from the case because she is not a state actor, thus cannot be held liable under § 1983. Section 1983 provides a private right of action against persons acting under color of state law who violate an individual's constitutional rights. *See Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014). "Whether a medical provider is a state actor is a functional inquiry, focusing on the relationship between the state, the medical provider, and the prisoner." *Id.* at 797 (quoting *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 718 (7th Cir. 2009)). "[M]edical providers who have 'only an incidental or transitory relationship' with the penal system are not considered state actors." *Id.* at 798 (citations omitted). Determining whether a private medical provider is a state actor is a fact-intensive question and "one of the more slippery and troublesome areas of civil rights litigation." *Rodriguez*, 577 F.3d at 823 (citations omitted).

In this case, Boilini's role is a bit vague, because it is unclear from the amended complaint exactly what role she played in obtaining the blood and urine. As such, this

12

question could benefit from discovery and is not appropriate to determine at this stage.

**CONCLUSION**

Because Boilini's addition to the case was not time-barred due to equitable tolling, and because the question of whether she was a state actor is better left to a summary judgment motion, her motion to dismiss is denied.

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Boilini's motion to dismiss (ECF No. 72) is **DENIED**.

Dated in Milwaukee, Wisconsin this 25th day of March, 2026.

STEPHEN DRIES
United States Magistrate Judge

13