**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**ROBERT EATON**

**Plaintiff,**

**v.** **Case No. 22-CV-1459**

**DORIS J. CARROL, *et al*.,**

**Defendants.**

---

**ORDER**

---

Plaintiff Robert Eaton, who is incarcerated and is represented by counsel, filed a complaint under 42 U.S.C. § 1983 allowing him to proceed on claims against various Kenosha County officers and Froedtert Hospital employees pursuant to the Fourth and Fourteenth Amendments related to a blood draw and urine test that were allegedly unlawfully taken and related state law claims. Defendants Theresa M. Harold, RN, and Jennifer Puente, RN, moved for a judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) on the following grounds: 1) Eaton's claims are barred by the statute of limitations; 2) the state court's orders, attached to the amended complaint, clearly show that Harold's and Puente's actions did not violated Eaton's constitutional rights; 3) Harold and Puente are not state actors under § 1983; and 4) if the § 1983 claims are dismissed against Harold and Puente, the court should relinquish jurisdiction over the Wisconsin state law claims.

## LEGAL STANDARD

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." motion under Rule 12(c) is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Adams v. City of Indianapolis*, 742 F.3d 720, 728-29 (7th Cir. 2014). "To survive a motion to dismiss under Rule 12(b)(6), a complaint must 'state a claim to relief that is plausible on its face.' . . . Factual allegations are accepted as true at the pleading stage, but 'allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion.'" *Id.* at 729 (citations omitted). The allegations must "permit the court to infer more than the mere possibility of misconduct." *Olson v. Champaign Cty., Ill.*, 784 F.3d 1093, 1099 (7th Cir. 2015) (citations omitted). At this stage, the court should not ask whether the allegations actually occurred but instead should ask whether they could have occurred. *Id.*

## PROCEDURAL HISTORY

The procedural history of this case directly impacts whether Beth and Weyker were timely added as defendants. The court will briefly summarize it here.[1] This case concerns a blood draw and urine sample taken from Eaton on March 8, 2021. (ECF No. 1 at 4.) Eaton filed the case *pro se* on December 6, 2022, noting that, "the entirety of this complaint was prepared almost in whole by a fellow pretrial detainee, and that I have zero experience with civil law proceedings." (*Id.* at 5.) Eaton further explained

[1] The court previously resolved a similar motion filed by defendant Margaret Bolini. A more extensive recitation of the procedural history is contained in that order. *See* ECF No. 96.

that he takes "psychotropic medications and [has] a diminished mental capacity", and that the pretrial detainee who was helping him with the complaint was leaving the facility in which they were incarcerated "within days of this writing." (*Id.*)

The case was initially in front of Chief Judge Pamela Pepper, who screened the complaint on March 28, 2023. (ECF No. 6.) Judge Pepper allowed Eaton to proceed against two Jane Doe nurses for allegedly drawing his blood and collecting his urine without his consent or a court order. (*Id.* at 6.) Judge Pepper noted that "it is not clear if the hospital staff defendants are state actors under §1983", and at this stage in the case, she would allow Eaton to proceed on claims against them. (*Id.*) Judge Pepper noted that Eaton would have to use discovery to identify the real names of the Doe defendants but also stated that the parties "must not begin discovery under after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions." (ECF No. 6 at 6, 14.)

The sole named defendant, Kenosha County Sheriff's Deputy Doris J. Carrol, answered the complaint on May 22, 2023. (ECF No. 14.) On May 24, 2023, Judge Pepper entered a scheduling order stating that Eaton must identify the Doe defendants and/or file an amended complaint by August 25, 2023. (ECF No. 15, ¶ 1.)

On June 6, 2023, Eaton filed a second motion to recruit counsel, (ECF No. 16), which the court granted on July 6, 2023, (ECF No. 20.) In her order, Judge Pepper determined that, "[w]hile his claim that the defendants unlawfully forced him to provide blood and urine samples is not very complex, [Eaton] is suing two sets of defendants (some with Kenosha County and some with Froedtert) and his ability to

identify the Froedtert defendants is limited because he is incarcerated. In addition, the plaintiff says he has a diminished mental capacity and that he cannot perform any legal work on his own." (*Id.* at 4.) Judge Pepper further stayed the case deadlines set forth in the scheduling order pending recruitment of counsel for Eaton. (*Id.* at 5.)

It took almost a year to find a lawyer willing represent Eaton. Judge Pepper recruited Thomas Hayes on June 18, 2024, and set a status conference for August 6, 2024. (ECF Nos. 24, 25.) At the August 6, 2024, status conference, Hayes indicated that while he had spoken to Eaton, he did not have enough information to determine how long it would take him to identify the Doe defendants in the case or whether to amend the complaint. (ECF No. 27.) Judge Pepper set another status conference for August 19, 2024, and at that conference, Hayes expressed doubts about his ability to continue to represent Eaton. (ECF Nos. 27, 30.) Judge Pepper set another status conference for September 6, 2024, and at that hearing, Hayes stated he intended to amend the complaint. (ECF Nos. 30. 32.) Judge Pepper set a deadline for Hayes to amend the complaint by November 8, 2024.

On October 23, 2024, Hayes filed a letter indicating that he was withdrawing as Eaton's lawyer, noting that "Mr. Eaton requested that my potential withdrawal as his attorney from this case not leave him in a worse procedural position than when I originally agreed to represent him on a *pro bono* basis." (ECF No. 33.) At a status conference on December 13, 2024, Hayes requested to withdraw as counsel for Eaton, which Judge Pepper granted. (ECF No. 36.) Judge Pepper noted that she had stayed the discovery and dispositive motion deadlines and asked Eaton if he would like

another lawyer recruited for him. (*Id.*) Eaton responded that he would, but he also requested that Carrol provide him discovery so he could review it. (*Id.*) Judge Pepper explained that if she lifted the stay for discovery, it would open the full discovery process, and after considering Judge Pepper's point, Eaton asked her to keep the stay in place until another lawyer could be recruited. (*Id.*)

On January 13, 2025, Judge Pepper recruited James Jenkins to represent Eaton for the or the limited purpose of assisting Eaton in identifying the Doe defendants and filing an amended complaint. (ECF No. 37.) At a status conference on February 21, 2025, Judge Pepper set a deadline for Eaton to identify the Doe defendants and amend the complaint by May 23, 2025. (ECF No. 42.)

On February 24, 2025, Judge Pepper entered an order adding Froedtert as a defendant for the limited purpose in assisting Eaton identify the Froedtert Doe defendants. (ECF No. 41.) The United States Marshal Service served Froedtert Memorial Lutheran Hospital on March 14, 2025. (ECF No. 45.) On March 25, 2025, a lawyer for Froedtert Memorial filed a letter indicating that Froedtert Memorial is different than the Froedtert Hospital in Pleasant Prairie, Wisconsin. (*Id.*) On April 21, 2025, Judge Pepper issued an order dismissing Froedtert Memorial and adding Froedtert South as a defendant for the limited purpose of helping plaintiff identify the Doe defendants. (ECF NO. 46.) Froedtert South returned an executed summons on April 30, 2025. (ECF No. 48.)

On June 26, 2025, Eaton moved for a partial lift on the stay of the discovery deadline so he could use the discovery process to identify the Doe defendants. (ECF

No. 52.) Judge Pepper granted the motion via text only order on June 27, 2025, ordering the named defendants to respond to discovery regarding the Doe defendants within 14 days of service. (ECF No. 53.) Eaton's amended complaint was then due ten days after the names of the Doe defendants were provided. (*Id.*)

On July 14, 2025, Eaton filed an amended complaint. (ECF No. 55.) The amended complaint alleged that Harold and Puente, along with defendant Margaret Bolini, collected Eaton's blood and urine samples. (*Id.*, ¶ 51.) Specifically, Harold authorized the collection of the samples, and Puente collected the samples, including six vials of blood. (*Id.*, ¶¶ 52-57.) They also compelled Eaton to urinate in a specimen cup. (*Id.*, ¶ 59.) Eaton further alleged that "Puente's extraction of blood was performed in a negligent manner, and as a result, he felt extreme shooting pain in his arm for months afterward." (*Id.*, ¶ 58.)

On July 22, 2025, Judge Pepper screened the amended complaint, ordering service of the amended complaint on Harold, Puente, and the other identified Doe defendants. (ECF No. 56.) Judge Pepper also set a status conference for August 29, 2025. (*Id.*) On October 21, 2025, Harold and Puente filed this motion for judgment on the pleadings. (ECF No. 80.) After all parties consented to the jurisdiction of a magistrate judge, on November 13, 2025, the case was reassigned to this court. (ECF No. 87.)

**ANALYSIS**

Harold and Puente move for judgment on the pleadings on four grounds: 1) that the claims against them are time-barred because they were identified as

defendants after the statute of limitations expired; 2) the state court's orders, attached to the amended complaint, clearly show that Harold's and Puente's actions did not violated Eaton's constitutional rights; 3) Harold and Puente are not state actors under § 1983; and 4) if the § 1983 claims are dismissed against Harold and Puente, the court should relinquish jurisdiction over the Wisconsin state law claims.

*Statute of Limitations*

Section 1983 does not have a limitations period, so federal courts adopt the limitations period applicable to personal injury claims under state law. *Devbrow v. Kalu*, 705 F.3d 765, 767 (7th Cir. 2013.) In Wisconsin, "the applicable residual statute for § 1983 claims is Wis. Stat. § 893.53." *D'aquisto v. Love,* No. 20-c-1034, 2020 WL 5982895 at *1, (E.D. Wis. Oct. 8, 2020). During the relevant time period, Wis. Stat. § 893.53 provided for a three-year statute of limitation period. The parties agree that the statute of limitations for both the § 1983 claims and the state claims the court took judicial notice of are 3 years. *See* Wis. Stat. § 893.57 (statute of limitations for battery claim is three years); Wis. Stat. § 893.54 (statute of limitations claim for negligence is three years).

Eaton does not dispute that the statute of limitations period ran on March 8, 2024, but instead asserts that the statute of limitations should be equitably tolled because Eaton could not identify Harold and Puente as Doe defendants by March 8, 2024, due to numerous delays in the case that were outside of his control. Equitable tolling may apply where Doe defendants are identified after the statute of limitations period has run. *Herrera v. Cleveland*, 8 F.4th 493, 497 (7th Cir. 2021). "Federal courts

use the tolling rules of whichever jurisdiction supplies the statute of limitations." *Degrave v. D.O.C.*, Case No. 21-cv-256-wmc, 2021 WL 5371393 at *2 (W.D. Wis. Nov. 18, 2021) (citing *Shropshear v. Corp. Counsel of City of Chi.*, 275 F.3d 593, 595 (7th Cir. 2001)). In Wisconsin, the state "case law on equitable tolling is sparse, but it is clear that . . . tolling is available only when the plaintiff's failure to meet a filing deadline is out of the plaintiff's control or occurred despite the plaintiff's due diligence." *Stallings v. Duran*, Case No. 22-CV-1330-JPS, 2023 WL 3170241 at * 1 (E.D. Wis. Apr. 28, 2023) (citations omitted). In other words, "[e]quitable tolling halts the limitations clock 'when a litigant has pursed his rights diligently but some extraordinary circumstance prevents him from brining a timely action.'" *Herrera*, 8 F.4th at 499 (quoting *Xanthopoulous v. U.S. Dept. of Lab.*, 991 F.3d 823, 831 (7th Cir. 2021). In the Eastern District of Wisconsin, where a court's management of the case and the procedural history and posture of the case interfered with the plaintiff's ability to identify the Doe defendants before the expiration of the limitations period the court equitably tolled the limitations period. *Juarez v. May*, Case No. 21-CV-1092, 2023 WL 7386199 at *2 (E.D. Wis. Nov. 8, 2023).

It is clear that the court's management of the case and the procedural history and posture of the case interfered with Eaton's ability to identify the Doe defendants. The complaint was filed on December 6, 2022. Judge Pepper did not screen the complaint allowing Eaton to proceed on claims against the Doe KCDC supervisor until March 28, 2023. In the screening order, Judge Pepper noted that Eaton had named Doe defendants but explicitly ordered him to refrain from conducting

discovery regarding the Does' identities until she entered a scheduling order. Judge Pepper entered a scheduling order on May 24, 2023, after the sole named defendant, Carroll, answered the complaint. Thus, Eaton could not begin to identify the Doe defendant until May 24, 2023.

Shortly thereafter, Eaton moved for the appointment of a lawyer, which Judge Pepper granted on July 6, 2023. In the same order, she also stayed all the case deadlines pending recruitment of counsel. In her order, Judge Pepper noted that it could take some time to recruit counsel. A *pro bono* lawyer was not recruited until June 18, 2024, almost a year later, which was no fault of Eaton's. Indeed, it is no secret in this district that it is extremely difficult to find lawyers willing to represent *pro se* prisoners, especially in the discovery phase of a litigation.

Unfortunately, after four months of hearings, Hayes withdrew from the case on December 14, 2023. Again, Hayes's inability to work on the case was no fault of Eaton's. At the hearing, Eaton inquired about opening discovery so he could identify the Doe defendants, but Judge Pepper advised against it, noting that another lawyer would be recruited. Ultimately, Eaton agreed with Judge Pepper, and the case deadlines remained stayed.

Jenkins came on as Eaton's *pro bono* lawyer on January 13, 2025. The case deadlines were still stayed. Judge Pepper held a status conference on February 21, 2025, and set a deadline to identify the Doe defendants and amend the complaint for May 23, 2025. Eaton, then, could not plausibly identify the Doe defendants until at

least February 21, 2025, which was already after the expiration of the limitations period of March 8, 2024.

Other delays, including adding Froedtert as a limited defendant to identify the Froedtert Doe defendants (which arguably should have been done at screening), and then the USMS serving the wrong Froedtert, were also delays outside of Eaton's control. As a result of these delays, Eaton did not identify the Doe defendants, including Harold and Puente, until July 14, 2025.

Based on this procedural history, Eaton could not identify the Doe defendants prior to the expiration of the March 8, 2024 deadline, and his inability to do so was through no fault of his own. The court's delays, which in and of itself were unusual, caused Eaton's inability to timely identify the Does. This is not a situation where the ordinary course of litigation caused typical delays. The failed recruitment of counsel and the USMS mix-up, for example, are highly unusual.

Harold and Puente argue that Eaton's amended complaint does not "relate back" to the filing of the original complaint because "Froedtert South" was not named in the original complaint. Therefore, Harold and Puente, who were employees of Froedtert South, were not timely added and the relation back doctrine under Fed. R. Civ. P. 15(c) does not apply. Froedtert Hospital was named as a defendant in the original complaint. (ECF No. 1.) Judge Pepper dismissed Froedtert Hospital in this screening order dated March 28, 2023, pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 58 (1978). (ECF No. 6.) However, recognizing that several of the Doe defendants were Froedtert employees, Judge Pepper should have retained Froedtert as a

defendant for the limited purpose of identifying the Doe defendants at that time. She did not fix this error until February 24, 2025. As for the confusion as to which Froedtert entity was named, that presumably, too, would have been corrected in March or April 2023, had Judge Pepper added Froedtert as a limited defendant. These issues and the delays caused by them were not Eaton's fault nor were they in Eaton's control.

Harold and Puente also argue that Eaton could have discovered the name of the defendants in the nearly two years between the incident and filing his complaint. They argue that Eaton could have still attempted to uncover the names of the Doe defendants by requesting records through a public records request. However, the court rarely agrees to recruit counsel for discovery, and the fact that it did so here indicates that the court determined that Eaton was unable to litigate the case on his own. If Eaton did not have the capacity to litigate the case, it follows that he did not have the capacity to request public records without assistance from a lawyer. Similarly, his inability to litigate the case also explains why Eaton failed to identify the Doe defendants prior to filing the case on December 6, 2022. Equitable tolling prohibits dismissing the case on statute of limitations grounds.

*Whether the Amended Complaint states a Fourth Amendment Claim Against Harold and Puente*

Harold and Puente argue that because the amended complaint included the state court's March 1, 2021 order for a blood draw, it means the blood draw was authorized and cannot be a Fourth Amendment violation. Eaton argues that the March 1 order did not authorize Froedtert to conduct the blood draw, but instead

states, "the defendant to submit to a collection of his blood by a healthcare professional at the Kenosha County Detention Center for testing." (ECF No. 55-1 at 3.) In other words, Froedtert was not authorized to conduct the blood draw. Harold and Puente argue that KCDC is allowed to delegate to a hospital for such collection. Eaton disputes this, noting that Froedtert staff initially refused to execute the court order and KCDC staff scrambled to get a corrected court order. The court must determine whether Eaton's allegations actually could have occurred, and at this stage, without more information, Eaton's characterization of the state court order is plausible. This argument is better left for later stages in the case after discovery has been conducted.

Similarly, Eaton's allegations that the court order for the urine sample was invalid are also plausible. The court order for the urine sample was not entered until March 9, 2021, the day after the urine sample was collected. Again, the question of whether the court order for urine was valid is better left for stages of the case post-discovery.

*State Actor*s *and Supplemental Jurisdiction*

Harold and Puente argue that they should be dismissed from the case because they are not state actors, thus cannot be held liable under § 1983. Section 1983 provides a private right of action against persons acting under color of state law who violate an individual's constitutional rights. *See Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014). "Whether a medical provider is a state actor is a functional inquiry, focusing on the relationship between the state, the medical provider, and the

prisoner." *Id.* at 797 (quoting *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 718 (7th Cir. 2009)). "[M]edical providers who have 'only an incidental or transitory relationship' with the penal system are not considered state actors." *Id.* at 798 (citations omitted). Determining whether a private medical provider is a state actor is a fact-intensive question and "one of the more slippery and troublesome areas of civil rights litigation." *Rodriguez*, 577 F.3d at 823 (citations omitted).

In the amended complaint, the roles of both Harold and Puente are not fleshed out. As such, this question could benefit from discovery and is not appropriate to determine at this stage.

Because the court declines to dismiss any of the § 1983 claims against Harold and Puente, the court will retain supplemental jurisdiction over the state law claims.

## CONCLUSION

For the reasons outlined above, the court denies Harold's and Puente's motion for judgment on the pleadings. The claims against Harlod and Puente may proceed, and the court retains supplemental jurisdiction over the state law claims.

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Harold's and Puente's motion for judgment on the pleadings (ECF No. 80) is **DENIED**.

Dated in Milwaukee, Wisconsin this 26th day of August, 2026.

STEPHEN DRIES
United States Magistrate Judge